IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| B. HALL CONTRACTING INC. d/b/a | § | |
| HALL CONTRACTING SERVICES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:06-CV-050-A |
| | § | |
| EVANSTON INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Before the court for decision are the motion of plaintiff,
B. Hall Contracting Inc. d/b/a Hall Contracting Services,
("Hall") for partial summary judgment and the motion of
defendant, Evanston Insurance Company, ("Evanston") for summary
judgment.

I.

Overview

This is an insurance coverage dispute.  The parties seek
declaratory adjudications as to the rights of Hall and the
obligations of Evanston in regard to two state court lawsuits
under a liability insurance policy issued by Evanston to Hall.
Hall maintains that Evanston has, and has had, an obligation to
defend Hall in the lawsuits and to satisfy on behalf of Hall any
liability that might be imposed on Hall to the plaintiffs in
those lawsuits.  Evanston contends that it has no obligation to
defend Hall and will have no payment obligation.  Each party has
moved for summary adjudication in its favor as to its basic

contentions.   The court has concluded that Evanston's motion should be granted and Hall's denied.

## II.

### The State Court Litigation

The state court lawsuits arise from an incident that occurred in October 2003 at the campus of the University of Texas at Arlington ("UTA") when a structure on the campus was destroyed by a fire, causing property damage to UTA, which is the plaintiff in one of the lawsuits, and personal injuries to the two individuals who are the plaintiffs in the other.   A more complete description follows[1]:

A.   The UTA Lawsuit.

The UTA lawsuit is pending in the District Court of Tarrant County, Texas, 236th Judicial District, as Cause No. 236-214456-05, styled "The University of Texas at Arlington and The University of Texas System, Plaintiffs, v. Williams & Thomas, Inc., D/B/A Jamail Construction, Defendant."   Though not reflected in the style, additional defendants are Hall, Devin Hall and Floydell Hall, individually and d/b/a F. Hall Mowing Company, and F. Hall, L.L.C.[2]

_____

[1]The descriptions of the lawsuits are based on the most current state court pleadings in the summary judgment papers--Plaintiffs' Second Amended Petition and Defendant's First Amended Third-party Petition in the UTA lawsuit and Plaintiffs' Original Petition in the personal injury lawsuit.

[2]Apparently Devin Hall, Floydell Hall, F. Hall Mowing Company, and F. Hall, L.L.C., were subcontractors under Jamail on the construction job in question who are unrelated to Hall, a separate subcontractor.

UTA alleges that it entered into a contract with Williams &
Thomas, Inc., d/b/a Jamail Construction, ("Jamail") for the
demolition of a structure where UTA's main electrical switchgear
room was located and for the construction of a temporary
structure to protect the switchgear and utility tunnels so that
they would remain operational during the demolition.  In October
2003 a fire destroyed the demolition site and the switchgear,
causing UTA to suffer damages in excess of $2,000,000.  According
to UTA:

> An investigation revealed that an employee of
> Defendant F. Hall Mowing subcontractor ("F. Hall") was
> cutting metal pipe and released a spark, which ignited
> the fumes from a roof adhesive and/or the roofing
> materials from a EPDM <u>membrane roof</u> application being
> done by another subcontractor, B. Hall Contracting,
> Inc., ("B. Hall").

Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J., App. at 69, ¶ 11
(emphasis added).

Under the heading "Negligence Cause of Action," the
following allegations are made:

> Defendants negligently constructed the temporary
> housing for the switchgear, which resulted in a fire,
> and the resulting destruction of the existing building
> as well as the switchgear.  In addition, Jamail, the
> general contractor, failed in its duty to adequately
> supervise the work of the Hall subcontractors.
> Further, both of the Hall subcontractors failed to
> properly supervise their workers, allowing them to
> continue their work in extremely close proximity to one
> another.

<u>Id.</u> at 70, ¶ 17.

Jamail filed a third-party petition against Hall, Devin Hall
individually and d/b/a F. Hall Mowing Company, F. Hall, L.L.C.,
and Floydell Hall, d/b/a F. Hall Mowing Company, alleging that

the fire occurred as a result of work being performed by the
third-party defendants.  Jamail seeks contribution or indemnity
from the third-party defendants, alleging that:

> [T]he occurrence and events made the subject of this
> lawsuit, as well as all damages sustained thereby, were
> proximately caused, contributorily caused, producingly
> caused, in whole or in part, by the acts, omissions,
> negligence, breach of contract, breach of warranty,
> fault or other conduct on the part of the Third Party
> Defendants . . . .

Id. at 76, ¶ 9.

In addition, Jamail seeks recovery (a) from Hall and F. Hall
Mowing Company based on their alleged failures to perform under
contracts between Jamail and those parties by which those parties
agreed to defend and indemnify Jamail with respect to claims or
losses arising out of or related to their performance of the work
that led to the fire, and (b) from all third-party defendants
based on their alleged failures to comply with agreements to
provide liability insurance coverage for Jamail so that Jamail
would be provided a full defense and indemnity with respect to
the claims asserted in the lawsuit.

B.    The Personal Injury Lawsuit.

The personal injury lawsuit is pending in the District Court
of Tarrant County, Texas, 153rd Judicial District, as Cause No.
153-212299-05, styled "Tim Calhoun and Gustine Gaston,
Plaintiffs, v. B. Hall Contracting, Inc., and F. Hall Mowing
Company/F. Hall L.L.C., Defendants."  Plaintiffs Calhoun and
Gaston allege that they were working with the defendants named in
the suit when the fire in question was negligently started by

4

defendants on a roof at UTA, causing the plaintiffs to be injured when they had to jump to the ground to avoid the fire.

III.

<u>The Activities of Hall at the Site of the Fire
When the Fire Started</u>

The sworn statement of Brett Hall, who is the president and owner of Hall, provides an explanation of the operation in which Hall was engaged, through a sub-subcontractor, when the fire started.

Hall is a construction company that does, among other things, building construction, office remodeling, fire restoration, carpentry, roofing, and painting.  It was working at UTA under subcontract with Jamail.  At the time of the fire, a sub-subcontractor, Ramirez Roofing Service ("Ramirez"), was finishing on behalf of Hall the installation of a roof on a temporary structure that was being erected to protect switchgear equipment located inside a larger building that was being demolished by Jamail, acting through F. Hall, another Jamail subcontractor.

The roof that was being installed by Hall, through Ramirez, was a type of membrane roofing known as ethylene propylene diene monomer, sometimes referred to as EPDM.  Use of that type of roofing product, which is flammable and is applied with a flammable adhesive, was inappropriate considering the demolition work being conducted over and around the surface where the roof was being installed.  Because of the demolition work, there was a

5

risk that embers or sparks from cutting torches would fall on the roofing material, causing it to catch fire.

IV.

Pertinent Parts of the Insurance Policy

The insurance policy in question, which bears policy number CL 420300372, was issued by Evanston to Hall, as the named insured, covering the January 8, 2003, to January 8, 2004, time period.  It provided commercial general liability insurance coverage to Hall.[3]

The insuring agreement of the policy obligates Evanston to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  Evanston's Mot. for Summ. J., App. at 22.  In addition, the policy imposes on Evanston the "duty to defend the insured against any 'suit' seeking those damages," id.; but, the policy goes on to say that "[h]owever, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply," id.[4]  According to the insuring

---

[3]The insurance policy contains two endorsements that name Jamail as an additional insured under the policy.  Evanston's Mot. for Summ. J., App. at 42-43.  However, those endorsements apparently are not relevant to the disputes in this case because there does not seem to be a contention that Evanston has any defense or payment obligation related to Jamail's third-party claim against Hall that Hall failed to provide liability insurance coverage for Jamail.  Such a contractual claim, if it had merit, clearly would be outside the scope of the insurance coverage.

[4]The defense-obligation wording of the insurance policy is different from the wording found in most liability insurance policies, in that it does not say that Evanston will "defend any suit
(continued...)

6

agreement, the "insurance applies to 'bodily injury' and

'property damage' only if: (1) The 'bodily injury' or 'property

damage' is caused by an 'occurrence' that takes place in the

'coverage territory'; and (2) The 'bodily injury' or 'property

damage' occurs during the policy period." Id.[5]

The exclusions on which Evanston relies as precluding

coverage under the policy for the state court lawsuits are (1)

the Roofing Endorsement exclusion; (2) the Breach of Contract

Exclusion; (3) exclusions j.(5) and (6); and (4) the exclusion

contained in the Combination General Endorsement applicable to

bodily injury to any employee of an independent contractor or

subcontractor.  Pertinent wording of these exclusions is set

forth below:

---

[4](...continued)
brought against [Hall] seeking damages, even if the allegations of
the suit are groundless, false or fraudulent." See, e.g., GuideOne
Elite Ins. Co. v. Field Road Baptist Church, No. 04-0692, 2006 WL
1791689, at *1 & *4 (Tex.  June 30, 2006); American Physicians Ins.
Exch. v. Garcia, 876 S.W.2d 842, 846 (Tex. 1994); Argonaut Sw. Ins.
Co. v. Maupin, 500 S.W.2d 633, 634 n.1 (Tex. 1973); Heyden Newport
Chem. Corp. v. S. Gen. Ins. Co., 387 S.W.2d 22, 24-25 (Tex. 1965).
See also C. T. Drechsler, Annotation, *Allegations in third person's
action against insured as determining liability insurer's duty to
defend*, 50 A.L.R.2d 458, 463-64 § 3 (1956).  The language missing
from the insurance policy at issue here has played a role in
developing the "eight-corners or complaint-allegation rule" for
determining whether an insurance company has a duty to defend.  See
GuideOne Elite Ins. Co., 2006 WL 1791689, at *2 & *4; 50 A.L.R.2d at
463-64 § 3.

[5]The parties apparently are in agreement that the fire in
question was an "occurrence" as that term is used in the policy, that
the damages alleged in the UTA lawsuit are "property damage" within
the meaning of the policy, that the damages alleged in the personal
injury lawsuit constitute "bodily injury" damages within the meaning
of the policy, that the location of the structure that burned was in
the "coverage territory" as that term is used in the policy, and that
alleged injuries and damages occurred during the policy period.

(1)  The Roofing Endorsement provides, in relevant part, as follows:

> The coverage under this policy does not apply to "bodily injury," "property damage," . . . or any injury, loss or damage arising out of:
>
>        *   *   *
>
> 3.  <u>Any operations involving any</u> hot tar, wand, open flame, torch or heat applications, or <u>membrane roofing</u>;

<u>Id.</u> at 47 (emphasis added).

(2)  The Breach of Contract Exclusion endorsement provides:

> This insurance does not apply to claims for breach of contract, whether express or oral, nor claims for breach of an implied in law or implied in fact contract, whether "bodily injury," "property damage," "advertising injury," "personal injury" or an "occurrence" or damages of any type is alleged; this exclusion also applies to any additional insureds under this policy.

<u>Id.</u> at 12.

(3)  Exclusions j.(5) and (6) read as follows:

> 2.  Exclusions
>
> This insurance does not apply to:
>
>        *   *   *
>
> j.  Damage to Property
>
> "Property damage" to:
>
>        *   *   *
>
> (5)  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6)  That particular part of any property that must be restored, repaired or replaced

> because "your work" was incorrectly performed
> on it.

Id. at 24.[6]

(4)   The pertinent part of the Combination General

Endorsement reads as follows:

> 8.   If you are a contractor, builder or developer,
> there is no coverage under this policy for:
>
> * * *
>
> (2)   "Bodily injury," "personal injury" or
> "property damage" sustained by any
> independent contractor / subcontractor, or
> any employee, leased worker, temporary or
> volunteer help of same, unless a Named
> Insured or employee of a Named Insured is on
> site, at the time of the injury or damage,
> and the Named Insured's actions or inactions
> are the direct cause of the injury or damage,
> or the injury or damage is directly caused by
> an employee of the Named Insured.

Id. at 8.   Though not relied on by Evanston as a basis of non-

coverage, the wording of an endorsement titled "Employees of

Independent Contractors Endorsement" has relevance to the

interpretation of section 8.(2) of the Combination General

Endorsement.   It reads:

> The coverage under this policy does not apply to
> "bodily injury," "property damage," "personal injury,"
> "advertising injury," or any injury, loss or damge

---

[6]The Contractor Limitation Endorsement deletes an exception to
exclusion (j.) by providing in paragraph II that:

> The last paragraph of Exclusions:
>
> 1.   J.   Damage to Property, and
>
> . . .
>
> [is] deleted in [its] entirety.

Id. at 13.

[sic] sustained by any employee of an independent
contractor <u>contracted by you or on your behalf</u>.

<u>Id.</u> at 17 (emphasis added).

V.

<u>Analysis</u>

A.   <u>Summary Judgment Standards</u>.

A party is entitled to summary judgment on all or any part
of a claim as to which there is no genuine issue of material fact
and as to which the moving party is entitled to judgment as a
matter of law.  Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby,</u>
<u>Inc.</u>, 477 U.S. 242, 247 (1986).  The moving party has the initial
burden of showing that there is no genuine issue of material
fact.  <u>Anderson</u>, 477 U.S. at 256.  The movant may discharge this
burden by pointing out the absence of evidence to support one or
more essential elements of the non-moving party's claim "since a
complete failure of proof concerning an essential element of the
nonmoving party's case necessarily renders all other facts
immaterial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25
(1986).  Once the moving party has carried its burden under Rule
56(c), the non-moving party must do more than merely show that
there is some metaphysical doubt as to the material facts.
<u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S.
574, 586 (1986).  The party opposing the motion may not rest on
mere allegations or denials of pleading, but must set forth
specific facts showing a genuine issue for trial.  <u>Anderson</u>, 477
U.S. at 248, 256.  To meet this burden, the nonmovant must
"identify specific evidence in the record and articulate the

10

'precise manner' in which that evidence support[s] [its] claim[s]." <u>Forsyth v. Barr</u>, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. <u>Anderson</u>, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. <u>Simmons v. Lyons</u>, 746 F.2d 265, 269 (5th Cir. 1984).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law. <u>Celotex Corp.</u>, 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. <u>Matsushita</u>, 475 U.S. at 597. <u>See also</u> <u>Boeing Co. v. Shipman</u>, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc) (explaining the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict).

B.    <u>Pertinent Texas Rules of Insurance Policy Interpretation</u>:

In <u>Sharp v. State Farm Fire and Casualty Insurance Co.</u>, the Fifth Circuit summarized the controlling Texas rules for

11

interpretation of language in an insurance policy, saying:

> Under Texas law, insurance policies are interpreted in accordance with the rules of construction that apply to all contracts generally.  It is well-established that ambiguities in insurance contracts are to be strictly construed against the insurer.  However, this rule of strict construction applies *only* if the contract is determined to be ambiguous.
>
> Whether the contract is ambiguous is a question of law for the court to decide.  The fact that the parties disagree as to coverage does not create an ambiguity, nor may extrinsic evidence be admitted for the purpose of creating an ambiguity.  As in all contract cases, the court looks first to the language of the contract itself, and [w]hen there is no ambiguity, it is the court's duty to give the words used their plain meaning.

115 F.3d 1258, 1260-61 (5th Cir. 1977) (citations & internal quotation marks omitted).

Under Texas law, "parol evidence is not admissible to render a contract ambiguous, which, on its face, is capable of being given a definite certain legal meaning." Lewis v. E. Tex. Fin. Co., 146 S.W.2d 977, 980 (Tex. 1941).  "Only where a contract is first determined to be ambiguous may the court consider the parties' intention and admit extraneous evidence to determine the true meaning of the instrument." Id. (citations omitted).

Hall has the initial burden to show that there is insurance coverage, while Evanston bears the burden to show the applicability of the exclusions upon which it relies. Guaranty Nat'l Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 193 (5th Cir. 1998).  Once Evanston shows that an exclusion applies, the burden then is on Hall to show that the claims at issue come within an exception to the exclusion. Id.

12

C.    Applicability, *vel non*, of the Exclusions on Which
      Evanston Relies.

      1.    The Roofing Endorsement.

      The roofing endorsement unambiguously says that "[t]he
coverage under this policy does not apply to . . . any injury,
loss or damage arising out of . . . [a]ny operations involving
any membrane roofing."  Evanston's Mot. for Summ. J., App. at 47.
By establishing through the sworn statement of the president and
owner of Hall that at the time of the fire Hall, through a sub-
subcontractor, was engaged in an operation involving membrane
roofing, Evanston has carried its burden to establish
applicability of the exclusion contained in the Roofing
Endorsement.  Hall has not shown any exception to the exclusion.
Therefore, the membrane roofing exclusion applies to prevent
insurance coverage for all of the claims made against Hall in the
state court lawsuits.

      The court has studied, and has given appropriate
consideration to, the declarations of John E. Gibson and Brett
Hall that Hall submitted in its summary judgment papers.  Pl.'s
Br. in Resp. to Defs.' Mot. for Summ. J., App. at 132-47, and
Pl.'s Reply to Defs.' Resp. to Pl.'s Mot. for Partial Summ. J.,
Ex. A.  The declarants argue that the term "membrane roofing" has
more than one meaning in the roofing industry and that the words
"membrane roofing" as used in Evanston's insurance policy should
be interpreted to mean only a "hot application membrane roofing."
Presumably the declarants are contending that only the "hot
application membrane roofing" is contemplated by the insurance

13

policy because the cold application membrane roofing that was being installed at UTA at the time of the fire did not have risk-of-fire characteristics sufficient to include it in an exclusion that was intended to eliminate from the coverage of the policy roofing operations that posed a risk of fire.  Brett Hall's sworn statement proves the fallacy of any such contention.  <u>Supra</u> at 5-6.

Interestingly, neither declarant professes to have any expertise in the interpretation of insurance policies.  Neither has been shown to have the qualifications required by Rule 702 of the Federal Rules of Evidence for the giving of an opinion relative to the meaning of the words used in the policy.[7]  For the most part, the declarations present nothing more than Hall's legal arguments in the guise of opinions of persons who have no apparent knowledge of the insurance business.  In the final analysis, the only thing relevant to this case the declarations establish is that the roofing operation in which Hall was engaged at the time of the fire was, indeed, an operation involving membrane roofing.

In his supplemental declaration, Brett Hall adds a new wrinkle to Hall's efforts to avoid the effect of the Roofing

---

[7]Decisions of the courts of the State of Texas, which has a rule of evidence identical in material respects to Rule 702 of the Federal Rules of Evidence, are helpful.  <u>See</u> <u>St. Paul Ins. Co. v. Rahn</u>, 641 S.W.2d 276, 284 (Tex. App.--Corpus Christi 1982, no writ) ("The coverage afforded by an insurance policy is not an area subject to interpretation by expert witnesses.").  <u>See also</u> <u>Cluett v. Med. Protective Co.</u>, 829 S.W.2d 822, 827 (Tex. App.--Dallas 1992, writ denied).

Endorsement by claiming that he was prompted to sign and return the endorsement because, before he did so, he had seen the specifications for the UTA project, understood that Hall would be requested to apply the EPDM roofing material at the project, and concluded that the cold application of that roofing material was not included within paragraph 3 of the Roofing Endorsement.  The court is not persuaded that extrinsic evidence of that kind can be used to restrict the meaning of the term "membrane roofing" as it is used in the endorsement.  If it could be, no insurer could rely on the wording of its insurance policies--an insured would be able to rewrite an insurance policy after the fact simply by saying that he understood when he bought the policy that the words meant something different from, or were more restrictive than, their literal meaning.

Nor is the court impressed by the argument that the term "membrane roofing" as used in the Roofing Endorsement must be given a narrow meaning because the policy shows that a premium was charged for the "Roofing-Commercial" hazard.  Evanston's Mot. for Summ. J., App. at 6.  The fact that the insurance company collected a small premium for the less than complete coverage for commercial roofing provides no reason for disregarding the clear language of the Roofing Endorsement, which defines the limited nature of the coverage.[8]

---

[8]The summary judgment evidence is that Evanston charged a premium of $77 for the "Roofing-Commercial" classification, which is less than 2% of the total premium of $5,400.00.  Evanston's Reply to Pl.'s Resp. to Evanston's Mot. for Summ. J., App. at 2.

2.   <u>The Breach of Contract Exclusion</u>.

There does not seem to be a disagreement between the parties that the Breach of Contract Exclusion causes there to be no insurance coverage for the claims being made against Hall in the UTA lawsuit based on alleged contractual commitments of Hall to Jamail.  This exclusion applies to Jamail's third-party claims (a) that Hall failed to perform its contract to defend and indemnify Jamail with respect to claims or losses arising out of or related to Hall's performance of the work that led to the fire, and (b) that Hall failed to perform a contractual commitment to provide liability insurance coverage for Jamail.[9]

3.   <u>Exclusions j.(5) and (6)</u>.

The court is not prepared to conclude at this time that either exclusion j.(5) or exclusion j.(6) is applicable to the state court lawsuits.  Upon further study, the court could well conclude that one or both of those exclusions apply, but, in view of other conclusions the court has reached, the court is not devoting further attention to them.

4.   <u>The Combination General Endorsement</u>.

Evanston maintains that this exclusion is another reason why the policy does not provide coverage for the claims asserted in the personal injury lawsuit, pointing out that the plaintiffs in

_____

[9]As noted earlier, <u>supra</u> at 6 n.3, there are two endorsements to the insurance policy that cause Jamail to be named as an insured under the policy, subject to certain limitations.  Evanston's Mot. for Summ. J., App. at 42-43.  The parties have not mentioned these endorsements in the summary judgment papers, and the court finds no reason to evaluate how those endorsements might bear on the issues raised by the summary judgment motions.

that lawsuit, Calhoun and Gaston, were employees of a subcontractor at the work site, and maintaining that there is no evidence in the summary judgment record that an employee of Hall, the named insured, was present at the work site when Calhoun and Gaston were injured.  Hall maintains that this exclusion does not apply, because, first, it contends that the word "subcontractor" as used in the exclusion refers to a subcontractor of Hall, not of someone else, and, second, it contends that, in any event, there is evidence in the summary judgment record that an employee of Hall was at the site at the time Calhoun and Gaston were injured and that Hall's actions or inactions were the direct cause of the injuries and damages suffered by Calhoun and Gaston or their injuries and damages were directly caused by an employee of Hall.

Hall's first contention is without merit.  The exclusion unambiguously has reference to any subcontractor or employee of same.  If the intent had been to limit the exclusion to subcontractors contracted by Hall or on its behalf, there would have been language in the exclusion similar to the language used in the Employees of Independent Contractors Endorsement that "[t]he coverage under this policy does not apply to . . . any injury, loss or damage sustained by any employee of an independent contractor contracted by you or on your behalf." Evanston's Mot. for Summ. J., App. at 17 (emphasis added).

However, the court is inclined to think that Hall's second contention has merit.  The employee of Hall overseeing the

17

roofing work Hall was doing at UTA has provided a declaration of facts that could form the basis for a finding that an employee of Hall was at the job site at the time Calhoun and Gaston were injured.  Pl.'s Br. in Resp. to Defs.' Mot. for Summ. J., App. at 148-49.  Thus, Hall appears to have raised an issue of fact invoking the first element of the exception to the exclusion under discussion.  Likewise, the court is not prepared summarily to conclude that the second element (that "[Hall's] actions or inactions are the direct cause of the injury or damage, or the injury or damage is directly caused by an employee of [Hall]") should be resolved against Hall.  Therefore, the court concludes that summary relief should not be granted relative to the potentially applicable exclusion in the Combination General Endorsement.

D.   Effect of the Court's Determinations Concerning Applicability of the Exclusions on Evanston's Obligations Relative to Payment and Defense.

1.   Payment.

The summary judgment papers disclose a disagreement between Hall and Evanston over whether Evanston's payment obligation has been put in issue.  The uncertainty on that subject was resolved by an agreement the parties reached during a telephone conference conducted between the court and counsel on August 24, 2006, and an order signed by the court on that same date.  The issue of whether Evanston has a payment obligation is justiciable even though no judgment has been entered against Hall in the

underlying actions.  See American States Ins. Co. v. Bailey, 133
F.3d 363, 368-69 (5th Cir. 1998).

     For the reasons given above, the court has concluded that
the exclusion contained in the Roofing Endorsement causes there
to be no insurance coverage under the policy as to any of the
claims that are being made against Hall in the state court
lawsuits.  There being no insurance coverage, Evanston has no
obligation under the insurance policy to make any payment as to
any of the claims being made against Hall in the state court
lawsuits.  Hall is entitled to a summary adjudication to that
effect.  While not dispositive, the court also has concluded that
the Breach of Contract Exclusion provides a further reason why
Evanston has no payment obligation under the insurance policy as
to the breach of contract claims.

     2.  Defense.

     As noted earlier, the defense-obligation language of the
Evanston insurance policy differs significantly from the language
found in the insurance policies that have been involved in the
cases through which the "eight-corners or complaint-allegation"
rule has developed.  Supra at 7 n.4.  The Evanston policy imposes
on Evanston the duty to defend only those suits seeking damages
to which the insurance provided by the policy applies.  As if to
eliminate any possible uncertainty on that subject, the policy
adds that Evanston "will have no duty to defend the insured
against any 'suit' seeking damages for 'bodily injury' or
'property damage' to which this insurance does not apply."

Evanston's Mot. for Summ. J., App. at 22.   Bearing in mind the

dictate of Texas law that "insurance policies are interpreted in

accordance with the rules of construction that apply to all

contracts generally," <u>supra</u> at 12, Evanston clearly has no

obligation to provide a defense to the state court lawsuits

because the insurance provided by the policy does not apply to

the damages sought in those lawsuits.

The defense-obligation language missing from the insurance

policy in question is the language that obligates the insurer to

defend a damage suit against the insured "even if the allegations

of the suit are groundless, false, or fraudulent."   The

significance of the omitted language to the "eight-corners or

complaint-allegation rule" was recently discussed by the Texas

Supreme Court in <u>GuideOne Elite Insurance Co. v. Fielder Road</u>

<u>Baptist Church</u>, where the Court said:

> Moreover, were we to recognize the exception urged
> here, we would by necessity conflate the insurer's
> defense and indemnity duties without regard for the
> policy's express terms.   Although these duties are
> created by contract, they are rarely coextensive.   The
> policy here obligated GuideOne to indemnify the Church
> in the event of a meritorious claim for sexual
> misconduct, but with <u>respect to the duty to defend, the</u>
> <u>contract provided that</u> GuideOne should "defend any suit
> brought against [the insured] seeking damages, <u>even if</u>
> <u>the allegations of the suit are groundless, false or</u>
> <u>fraudulent</u> . . . ."
>
> <u>The policy thus defined the duty to defend more</u>
> <u>broadly than the duty to indemnify</u>.   <u>This</u> is often the
> case in this type of liability policy and <u>is, in fact,</u>
> <u>the circumstances assumed to exist under the eight-</u>
> <u>corners rule</u>.   Because the respective duties differ in
> scope, they are invoked under different circumstances.
> A plaintiff's factual allegations that potentially
> support a covered claim is all that is needed to invoke
> the insurer's duty to defend; whereas, the facts

actually established in the underlying suit control the
duty to indemnify.

2006 WL 1791689, at *4 (Tex. June 30, 2006) (citations omitted)
(emphasis added).  As the Texas Supreme Court explained, the
policy language that is missing from the Evanston policy is
"assumed to exist under the eight-corners rule."  Id.  And, that
policy language is what causes the insurance company's duty to
defend to be broader than its duty to indemnify.  Because
Evanston's policy does not contain that language, the "eight-
corners or complaint-allegation rule" is not applicable to this
case.  The language of the Evanston policy makes the duty to pay
and the duty to defend coextensive.

That is not to say that Evanston would not have a duty to
defend a damage suit brought against Hall in which the claims in
the suit are based on groundless, false, or fraudulent
allegations.  Such a duty to defend would exist under the
language of the Evanston insurance policy so long as the alleged
liability facts state a claim for damages "to which [the]
insurance applies."  Evanston's Mot. for Summ. J., App. at 22
(emphasis added).  The policy imposes on Evanston the "duty to
defend the insured against any 'suit' seeking those damages."
Id. (emphasis added).  Under the language of the policy, Evanston
would not be able to avoid the defense obligation on the ground
that extrinsic facts establish that the insured is not liable in
the underlying suit.  The key is whether the suit "seeks" damages
to which the insurance applies.  However, the insurance policy
makes clear that if the insurance coverage does not extend to

21

damages sought in the suit against the insured, the insurance company does not have an obligation to defend the suit.  As a consequence, Evanston has no obligation to defend either of the state court lawsuits because neither "seeks" damages to which the insurance applies.

Even if the court were to assume that, notwithstanding the unique defense-obligation language used in the Evanston policy, the court should apply the "eight corners or complaint-allegation" rule, the outcome would be the same.  In GuideOne, the court explained the rule as follows:

> Under the eight-corners or complaint-allegation rule, an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations.  The rule takes its name from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the third-party claimant.  Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination and allegations against the insured are liberally construed in favor of coverage.

GuideOne Elite Ins. Co., 2006 WL 1791689, at *2 (citations omitted).

When that rule is applied to the UTA lawsuit, it leads to the conclusion that Evanston has no duty to defend that lawsuit because, within the "eight-corners," enough information exists to disclose that the damages claimed in the lawsuit are outside the scope of the insurance coverage.  One need only to look to UTA's pleading to know that the damages arose out of operations involving membrane roofing.  Pl.'s Br. in Resp. to Defs.' Mot. for Summ. J., App. at 69, ¶ 11.  Then, one need only to look to

22

the insurance policy to know that the coverage under the policy does not apply to any operations involving membrane roofing. Evanston's Mot. for Summ. J., App. at 47.

However, there is no allegation of fact in the personal injury lawsuit that discloses that the damages sought in that lawsuit are outside the scope of the insurance coverage.  So, unless the personal injury lawsuit comes within an exception to the rule, Evanston would have an obligation to defend that lawsuit if the "eight corners" rule were applicable.  In GuideOne, the Texas Supreme Court described such an exception, which permits the use of extrinsic evidence "when relevant to an independent and discrete coverage issue, not touching on the merits of the underlying third-party claim."  GuideOne Elite Ins. Co., 2006 WL 1791689, at *2.  The Texas Supreme Court gave International Service Insurance Co. v. Boll, 392 S.W.2d 158 (Tex. Civ. App.--Houston 1965, writ ref'd n.r.e.), as an example of a case where the exception was applied.  When explaining the distinction between the facts of Boll and the GuideOne facts, the court said:

> The extrinsic evidence in *Boll*, . . ., went strictly to the coverage issue.  It did not contradict any allegation in the third-party claimant's pleadings material to the merits of that underlying claim.  In contrast, the extrinsic evidence here concerning Evans' employment directly contradicts the plaintiff's allegations that the Church employed Evans during the relevant coverage period, an allegation material, at least in part, to the merits of the third-party claim.

GuideOne Elite Ins. Co., 2006 WL 1791689, at *3.  As was true in Boll, the extrinsic evidence here (the facts establishing

23

applicability of the Roofing Endorsement exclusion) does not
contradict any allegation in the state court pleadings.  Rather,
the extrinsic evidence establishing non-coverage is perfectly
consistent with the allegations in the state court pleadings.

In <u>Cook v. Ohio Casualty Insurance Co.</u>, a court of appeals
of Texas (relying on the failure of the Texas Supreme Court to
review the <u>Boll</u> decision) observed that:

> [T]he Supreme Court draws a distinction between cases
> in which the merit of the claim is the issue and those
> where the coverage of the insurance policy is in
> question.  In the first instance the allegation of the
> petition controls, and in the second the known or
> ascertainable facts are to be allowed to prevail.

418 S.W.2d 712, 715-16 (Tex. Civ. App.--Texarkana 1967, no writ).

Similarly, in <u>Gonzales v. American State Insurance Co. of Texas</u>,
the court, after having reviewed the cases cited in support of
the "eight-corners or complaint-allegation rule," observed
that:

> A careful reading of these cases, however, discloses
> that the allegations referred to are allegations as to
> the insured's liability.  In other words, no legal
> determination of the insured's ultimate *liability* is
> required before the insurer's duty to defend arises.
> But where the petition does not allege facts sufficient
> for a determination of whether those facts, even if
> true, are covered by the policy, the evidence adduced
> at the trial in a declaratory judgment action may be
> considered along with the allegations in the petition.

628 S.W.2d 184, 186 (Tex. App.--Corpus Christi 1982, no writ).

Evanston is not taking the position that any allegation made
in the state court pleadings is false or fraudulent.  Rather,
Evanston accepts the allegations of the state court pleadings as
true when pointing out that there simply is no insurance coverage

24

for the claims asserted by those allegations.  This differs from the contention of the insurer in <u>GuideOne</u>.  In <u>GuideOne</u>, the fact on which the insurance company relied to avoid coverage (that the alleged wrongdoer in the underlying suit was not an employee of the insured during the period of the policy) disputed a pleaded fact that was an element of the damage claim made in the underlying suit (that is, that the alleged wrongdoer was acting as an employee of the insured at that time).  The issue was not one of coverage, but rather one of merit, <u>vel non</u>, of the allegations of damage suit.  That is quite a different proposition from the one presented in the instant action.

Potential merit of the state court lawsuits, on the one hand, and whether there is insurance coverage for the damages alleged in those lawsuits, on the other, are separate and distinct issues here.  While, coincidently, some of the same facts might be relevant to those separate issues, none of the facts relied on by Evanston to defeat insurance coverage would contradict, much less defeat, the claims asserted in the damage lawsuits, and, vice versa.  Thus the exception to the rule applies here--the extrinsic evidence, in the form of Brett Hall's statement, that establishes non-coverage is "relevant to an independent and discrete coverage issue, not touching on the merits of the underlying claim[s]."  <u>GuideOne Elite Ins. Co.</u>, 2006 WL 1791689, at *2.

VI.

<u>Order</u>

For the reasons given above,

The court ORDERS that Evanston's motion for summary judgment be, and is hereby, granted, and that Hall's motion for partial summary judgment be, and is hereby, denied.

The court further ORDERS and DECLARES that Evanston does not have, and has not had, any obligation to defend Hall in either of the state court lawsuits, Cause No. 236-214456-05 and Cause No. 153-212299-05, and that Evanston has no obligation to make any payment on behalf of Hall with respect to any liability imposed on Hall as to any of the claims asserted against it in either of those lawsuits or to provide any indemnification to Hall with respect to any payment Hall is required to make because of any of those claims.

SIGNED September __1__, 2006.

                              ___/s/ John McBryde_____
                              JOHN McBRYDE
                              United States District Judge

26